


FILED

Mar 12 2024, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-JV-40

## A.W.,
*Appellant (Respondent below),*

–v–

## State of Indiana,
*Appellee (Petitioner below).*

Argued: May 4, 2023 | Decided: March 12, 2024

Appeal from the Marion Superior Court
No. 49D09-2107-JD-5869
The Honorable Geoffrey A. Gaither, Judge
The Honorable Duane E. Merchant, Magistrate
On Petition to Transfer from the Indiana Court of Appeals
22A-JV-150

**Opinion by Justice Massa**
Chief Justice Rush and Justices Slaughter and Molter concur.
Justice Goff concurs in the judgment with separate opinion.

**Massa, Justice.**

Does Indiana double jeopardy law apply to a juvenile in possession of a firearm with a novel Glock switch feature that turns it into a machine gun?[1] We know that "[c]onfusion over double jeopardy is not new." *Richardson v. State*, 717 N.E.2d 32, 59 (Ind. 1999) (Boehm, J., concurring in result). More than three years ago, this Court in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), attempted to clarify double jeopardy by overturning the constitutional tests announced in *Richardson*, which itself sought to institute a "single comprehensive rule" that combined a "statutory elements" test with an "actual evidence" test for resolving "substantive" double jeopardy claims; in other words, claims based on **multiple punishments** for the same act in a single proceeding, not multiple trials. *Wadle*, 151 N.E.3d at 240–41. But *Richardson* ultimately proved to be unworkable in practice—in part, because it presented an "either/or" option for courts to apply one test over another. *Id.* at 241. This reflected a checkered form of "double jeopardy double talk," *see* Akhil Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1807 (1997), that engendered "a patchwork of conflicting precedent and inconsistent standards," *Wadle*, 151 N.E.3d at 235. In response, *Wadle* introduced a three-part test focused on statutory interpretation. *Id.* at 248. Courts have since wrestled with applying the *Wadle* framework, and at times have misapplied its instructions by resurrecting a version of the "actual evidence" test from *Richardson*—first in dicta, *see Phillips v. State*, 174 N.E.3d 635, 646–47 (Ind. Ct. App. 2021), which then became part of a published decision, *see Harris v. State*, 186 N.E.3d 604, 611–12 (Ind. Ct. App. 2022). We disapprove any

---

[1] Subsequent to this adjudication, the Governor signed into law House Enrolled Act 1365, Pub. L. No. 80-2023, which expanded—for purposes of an enhancement and certain criminal offenses—the definition of "[m]achine gun," to include a weapon "designed to shoot . . . automatically more than one (1) shot, without manual reloading, by a single function of the trigger." Ind. Code § 35-31.5-2-190(a)(2) (2023). Under the law, subsection (b) further defines the meaning of machine gun to include "(1) the frame or receiver of a weapon described in subsection (a); (2) a: (A) part designed and intended solely and exclusively; or (B) combination of parts designed and intended; for use in converting a weapon into a machine gun; and (3) any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person." *Id.* § -190(b)(1)–(3).

opinion that relies on this principle and reiterate the *Wadle* test for resolving substantive double jeopardy claims, albeit with a small but crucial adjustment at Step 2, where courts will now construe ambiguities from charging instruments in favor of defendants.

But first, we have a case to resolve. A.W. challenges his multiple juvenile adjudications for possession of a machine gun, a Level 5 felony if committed by an adult, and dangerous possession of a firearm, a Class A misdemeanor.[2] We reach three conclusions about these adjudications. **First**, we find that A.W.'s exclusive possession of a handgun—one with a Glock switch attached, which transformed the semiautomatic gun into a fully-automatic one—coupled with his abrupt flight, supports the finding that he "knowingly or intentionally" possessed a machine gun in violation of Indiana Code section 35-47-5-8. **Second**, we clarify that while Article 1, Section 14 of the Indiana Constitution could apply in juvenile proceedings, constitutional avoidance counsels against deciding that issue today. **Third**, we hold that possession of a dangerous firearm is a "lesser-included" offense of possession of a machine gun, and thus violated A.W.'s right to be free from substantive double jeopardy under *Wadle*.

Accordingly, we affirm the sufficiency of the evidence, but reverse the adjudication that A.W. committed dangerous possession of a firearm.

# Facts and Procedural History

A.W., a seventeen-year-old, fled on foot from a traffic stop for speeding. While A.W. ran, officers noticed a gun in his hand. Indianapolis police officer Scott Highland ordered A.W. to get on the ground several times,

---

[2] "Juvenile adjudication" is now the preferred term of art for what was commonly called a "true finding," the juvenile law equivalent of a guilty verdict on a particular count in adult criminal court. The case today involves **multiple** juvenile adjudications in the same case, triggering a *Wadle* substantive double jeopardy analysis. It does not involve **successive** juvenile adjudications, which could implicate Article 1, Section 14's procedural double jeopardy protections. *See infra* at Section II.

but he continued to run. A.W. tripped, and as he started to fall to the ground, he threw the gun away.

Officer Highland arrested A.W., and, during a pat down search, found a phone and a "large sum of money" in his pockets. Tr. at 11. The other officer at the scene, Sergeant Kyle Hodges, recovered the gun—a nine millimeter Glock 17 handgun with a 30-round extended magazine and a laser pointer. Officer Highland noticed the Glock was "essentially" the same as his own firearm, except something was "different" about this Glock, as it had a modifying device attached. *Id.* at 12.

The State filed a delinquency petition against A.W., alleging that he had committed acts which, if committed by an adult, amount to three Class A misdemeanors: (1) carrying a handgun without a license, (2) resisting law enforcement, and (3) criminal mischief. The State also alleged that A.W. committed (4) dangerous possession of a firearm, a Class A misdemeanor applying to mere possession of a firearm by a juvenile. A fellow officer assigned to work with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives task force, discovered the device attached to the weapon was a "Glock switch," which transforms the weapon "from a semiautomatic to an automatic handgun," *id.* at 21, and explained that these modifications have "been around for a few years" and that "we're seeing more and more of them," *id.* at 28, 30.

With this information, the State amended its delinquency petition to add another count—possession of a machine gun, a Level 5 felony if committed by an adult. After a factfinding hearing, the juvenile court concluded that A.W. committed each of the offenses as alleged in the amended petition and thus entered separate juvenile adjudications for each offense. The trial court placed A.W. on probation and released him to his father's custody. A.W. appealed.

In a published opinion, the Court of Appeals unanimously affirmed the sufficiency of the evidence but reversed in a 2–1 decision on substantive double jeopardy grounds. *A.W. v. State*, 192 N.E.3d 227, 232 (Ind. Ct. App. 2022), *vacated*. First, the panel concluded that A.W.'s exclusive possession of the Glock as modified was sufficient evidence that he "knowingly or intentionally" possessed a machine gun in violation of Indiana Code

section 35-47-5-8. *Id.* at 231. Second, the majority held that (1) dangerous possession of a firearm and (2) possession of a machine gun—as charged and proven at A.W.'s hearing—violated substantive double jeopardy under *Wadle*, because the "same firearm was the means used to commit both offenses," thus making them factually included offenses. *Id.* at 232. The majority reversed the juvenile court's adjudication that A.W. committed dangerous possession of a firearm. *Id.* A dissenting opinion, however, concluded that the two offenses were **not** factually included because while the charges overlap in that A.W. possessed a firearm, they do not amount to multiple punishment because "one requires proof that he had the status of a minor" and the other requires proof that he "possessed a machine gun, which no person may lawfully possess, minor or not." *Id.* at 233 (Bradford, C.J., concurring in part, dissenting in part).

A.W. sought transfer on the sufficiency of the evidence issue, and the State submitted a brief in response. The State also filed its own transfer petition solely on the double jeopardy question. A.W. did not respond.

We granted transfer, 205 N.E.3d 190 (Ind. 2023), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

# Standards of Review

This challenge to the trial court's multiple juvenile adjudications has two layers of review. **First**, A.W.'s sufficiency of the evidence argument "implicate[s] a deferential standard of review." *Carmack v. State*, 200 N.E.3d 452, 459 (Ind. 2023) (cleaned up). When reviewing sufficiency claims in the special context of a juvenile adjudication, such as here, "we do not reweigh the evidence or judge witness credibility," but appraise "only the evidence favorable to the judgment and the reasonable inferences supporting it." *B.T.E. v. State*, 108 N.E.3d 322, 326 (Ind. 2018) (citing *K.S. v. State*, 849 N.E.2d 538, 543 (Ind. 2006)). We will affirm a juvenile adjudication "if a reasonable trier of fact could conclude that the [respondent] was guilty beyond a reasonable doubt." *Id.* (citing *Moran v. State*, 622 N.E.2d 157, 159 (Ind. 1993)). And **second**, A.W.'s double jeopardy challenge—(1) whether Article 1, Section 14 of the Indiana

Constitution applies in juvenile proceedings; and (2) whether his multiple adjudications violated his right to be free from substantive double jeopardy—involves controlling questions of law that we review de novo. *Wadle*, 151 N.E.3d at 237; *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020).

# Discussion and Decision

## I.  A.W.'s exclusive possession of the firearm, which contained a Glock switch feature, was sufficient evidence that he "knowingly or intentionally" possessed a machine gun.

A.W. challenges the sufficiency of the evidence to sustain the juvenile court's adjudication of possession of a machine gun. He argues that he did not **know** the Glock switch converted the firearm from a semiautomatic weapon to a machine gun, and therefore his "mere possession" of this feature was insufficient evidence to establish his mens rea. A.W. Pet. to Trans. at 6. The trial court considered the facts and found that A.W. "knowingly or intentionally" possessed a modified machine gun. Tr. at 60.

The statutory mens rea requirement imposes the following burden on the State: in order to prove that A.W. committed the machine gun offense, it must show that he "knowingly or intentionally own[ed] or possesse[d] a machine gun . . . ." I.C. § 35-47-5-8. A.W. admits the evidence established exclusive possession but claims the State could not show beyond a reasonable doubt that he knew the Glock switch feature attached to the slide converted the Glock to a machine gun. We respectfully disagree.

Admittedly, it is hard to get inside head of the defendant: "[k]nowledge and intent are both mental states and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence[.]" *Stokes v. State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010), *trans. denied*. So given this real-world constraint, a defendant's mens rea may be proven by "circumstantial evidence,"—that is, it may be reasonably "inferred from a defendant's conduct and the natural and usual sequence to which such conduct

logically and reasonably points." *Id.* Reasonable inferences are foundational to criminal law. In Indiana, courts have found that **exclusive possession** of contraband supports an inference that the person "knows of the contraband's presence and of its forbidden character." *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985), *trans. denied*. Rightfully so.

Applying Indiana's exclusive possession precedent to A.W., we conclude that his exclusive possession of the gun while the officers were chasing him for at least thirty seconds supplied the trial court with a reasonable inference that he **knew** the gun was, in fact, a modified machine gun. *See id.* And the juvenile court finding that his corresponding **conduct**—his abrupt flight from the traffic stop—also supports a reasonable inference that he knew the gun was a machine gun. *See Stokes*, 922 N.E.2d at 764. We acknowledge this presents a close call, but our standard of review requires that we reject any invitation to the contrary today because it would amount to an impermissible reweighing of evidence. *See J.C. v. State*, 131 N.E.3d 610, 612 (Ind. Ct. App. 2019). We thus affirm the juvenile court's finding that A.W.'s exclusive possession of the weapon, coupled with his abrupt flight, is sufficient evidence that he "knowingly or intentionally" possessed a machine gun.

## II.  Article 1, Section 14's protective scope for procedural double jeopardy could apply in juvenile proceedings, but we decline to answer that question due to constitutional avoidance.

We turn next to A.W.'s double jeopardy claim. The threshold issue is whether Article 1, Section 14 of the Indiana Constitution—barring **procedural** double jeopardy—applies in juvenile proceedings.[3] While we asked for supplemental briefing on this question,[4] the doctrine of

---

[3] "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14.

[4] We thank the parties for their supplemental briefing on this constitutional question.

constitutional avoidance cautions answering it today. *See Ind. Land. Tr. Co. v. XL Inv. Props., LLC*, 155 N.E.3d 1177, 1182–83 (Ind. 2020) (explaining that "constitutional avoidance . . . weighs against deciding constitutional questions not absolutely necessary" to the merits (quotations omitted)).

To be sure, there is an important doctrinal distinction in Indiana between procedural and substantive double jeopardy. In *Wadle*, this Court bifurcated the analysis for procedural and substantive double jeopardy claims, grounding the procedural strand in the state constitution and the substantive strand in the statutory law.[5] For the former type, *Wadle* confirmed that the "protective scope" of Article 1, Section 14 is restricted to "**successive prosecutions** for the same offense." 151 N.E.3d at 246 (emphasis added). We acknowledge that same protective scope could apply in the juvenile context to restrain successive adjudications for the same offense. And yet while we are open to considering whether Article 1, Section 14—applicable to claims of procedural double jeopardy—applies to juveniles, we reserve that constitutional question for another day.

---

[5] We acknowledge our ongoing role in the confusion surrounding the term "double jeopardy." In *Wadle*, we tried to clarify that, as a matter of constitutional law, it only bars **successive prosecutions** for the "same offense." 151 N.E.3d at 246. We have referred to this principle as "constitutional" or "procedural" double jeopardy, *id.* at 245–46, and continue to use the term "substantive double jeopardy" to describe the law barring multiple **punishments** in a single proceeding, *id.* at 246–47, which is not necessarily of constitutional magnitude. *Cf.* at 250 (*Wadle* does "not suggest that protection from multiple punishments in a single prosecution falls beyond the constitutional pale," as substantive double jeopardy safeguards in Indiana may "operate in harmony with, not in isolation from . . . supplemental constitutional protections"); *see also* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind. L. Rev. 575, 576 (1989) (Indiana Bill of Rights erects a robust framework of constitutional protections enshrined to protect Hoosiers "from the excesses of government").

We must now assess whether A.W.'s multiple adjudications are the "same offense" under *Wadle*, which we **assume without deciding** applies.[6]

# III. A.W.'s multiple adjudications violated his right to be free from substantive double jeopardy.

Unlike procedural double jeopardy under Article 1, Section 14 (which bars successive prosecutions for the same offense), **substantive** double jeopardy refers to claims related to multiple convictions for the same offense in a single proceeding. *Wadle*, 151 N.E.2d at 246–47. We thus look to *Wadle*, which established a three-part test based on statutory sources to more faithfully determine whether A.W.'s multiple adjudications were for the "same offense." Today, we apply *Wadle* step by step, and clarify perhaps misunderstood directions, while adding a modification at Step 2.

## A. Three-Step Approach to Substantive Double Jeopardy

### 1. Interpret statutory language

We start with the statutory language of the offenses. "If the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy." *Id.* at 248 (footnote omitted).

### 2. Apply included-offense statute

If the statutory language does not clearly permit multiple punishments, "a court must then apply our included-offense statutes to determine **statutory intent**." *Id.* (emphasis added) (citing *Collins v. State*, 645 N.E.2d

---

[6] The issue of whether substantive double jeopardy applies in juvenile proceedings is a classic policy judgment best fit for the General Assembly. While some criminal-code protections apply to juveniles, *see* I.C. § 31-32-1-1 (criminal procedures apply to juveniles whenever the juvenile code does not provide otherwise), the statute for a court's entry of a judgment and sentence when a defendant is convicted of both an offense and an included offense does not translate perfectly into the juvenile context of delinquency adjudications, *see* I.C. § 35-38-1-6. For this reason, and out of deference to the people's branch, we leave this question for the legislature to decide if substantive double jeopardy applies in juvenile proceedings.

1089, 1093 (Ind. Ct. App. 1995) (highlighting that our included-offense statute helps courts ascertain "legislative intent"), *aff'd in part, vacated in part on other grounds*, 659 N.E.2d 509 (Ind. 1995)). An "included offense," as defined by the General Assembly, is an offense

> (1) that "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged,"
>
> (2) that "consists of an attempt to commit the offense charged or an offense otherwise included therein," or
>
> (3) that "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission."

I.C. § 35-31.5-2-168. "If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy" and the analysis ends—full stop. *Wadle*, 151 N.E.3d at 248. But if one offense is included in the other, the court must proceed to Step 3. *See id.*

Confusion abounds about the meaning and application of two key phrases: "inherently" and "as charged." We take this opportunity to bridge any analytical gaps. *Wadle* defined an "inherently included" offense as one that "may be established by proof of the same material elements or less than all the material elements defining the crime charged," or if "the only feature distinguishing the two offenses is that a lesser culpability is required to establish the commission of the lesser offense." *Id.* at 251 n.30 (quoting *Young v. State*, 30 N.E.3d 719, 724 (Ind. 2015)). *Wadle* thus approved subsection (1) and the last part of subsection (3) of the included-offense statute to be within the inherently included inquiry. *Id.* Today, we clarify that this evaluation should be made under

**all** three subsections.[7] Thus, to constitute an inherently included offense, it must fit within one of those enumerated subsections. I.C. § 35-31.5-2-168.

*Wadle* does not define the meaning of "as charged." *See* 151 N.E.3d at 248. But this phrase makes more sense when analyzed at Step 2 within the factually included inquiry. These two concepts—as charged and factually included—should be treated as synonymous under *Wadle*: "the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.* at 251 n.30 (quoting *Young*, 30 N.E.3d at 724) (cleaned up).

But that leaves us with another open question about the scope of the factually included inquiry at Step 2. We conclude that when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**. This includes examining the "means used to commit the crime charged," which must "include all of the elements of the alleged lesser included offense." *Id*. Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial. *Cf. Phillips*, 174 N.E.3d at 647. The factually included inquiry at this step is thus limited to facts on the face of the charging instrument. Otherwise, Step 2 would be another formulation of the now-retired *Richardson* approach. *Richardson*'s "either/or" regime was rejected because it gave courts **options**, which thus led to a selective application of "one test over another." *Wadle*, 151 N.E.3d at 241. Using their discretion, courts typically focused on actual evidence rather than the statutory elements, which led to a mélange of inconsistency. *Compare Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015) (double jeopardy violation existed "because the facts establishing criminal confinement would also establish battery[,]" though the facts establishing the latter offense would not have established the former), *with Carrico v. State*, 775 N.E.2d 312, 314

---

[7] Our decision to bridge this analytical gap today finds support in *Wright v. State*, 658 N.E.2d 563 (Ind. 1995), which left open the door for the first part of subsection (3) of the included-offense statute—"differs from the offense charged only in respect that a less serious harm or risk of harm to the same person, property, or public interest"—to be "treated as an inherently included offense" under our double jeopardy analysis. *Id.* at 566 n.2.

(Ind. 2002) (no double jeopardy violation where evidence establishing murder established only one element of B felony robbery, even though evidence establishing the latter crime may have established the former).

Inconsistency breeds confusion, and confusion imperils the rule of law. In addressing this axiom, *Wadle* attempted to combat any potential legitimacy concerns by restoring order to Indiana's double jeopardy jurisprudence: it focused on the included-offense statute. *See* 151 N.E.3d at 235. *Wadle* thus assigned the "underlying" factual inquiry—which includes evidence from trial—to Step 3. *Id.* at 249. In other words, Step 3 is authorized, but only if one offense is included in the other under Step 2. *Wadle* contains clear stopping points in its analytical sequence: if Step 2 is **not** met, the analysis **ends**. We thus conclude that courts must confine their Step 2 analysis to (1) the included-offense statute (whether the offenses are "inherently" included), and (2) the face of the charging instrument (whether the offenses "as charged" are factually included).

The Step 2 analysis has produced confusion beginning with *Phillips*, 174 N.E.3d 635, an appellate decision that resurrected the actual evidence test by importing similar language from *Richardson*. In *Phillips*, the Court of Appeals found that two offenses "could be factually included depending on the manner in which the State charged the defendant and **the evidence produced at trial**. In other words, a prosecutor cannot secure two convictions for the same act using the **exact same evidence**." *Id.* at 647 (emphasis added). *Phillips* determined the offenses were inherently included, but then observed in dicta that possession and dealing in methamphetamine were factually included based on the charging instrument and evidence at trial, the latter which included the State's closing statements when explaining the evidence of the two offenses. *Id.* at 646–47. Simply put, *Phillips* engrafted *Richardson*-style language onto Step 2, and panels have since used phrases like "evidence produced at trial"

and "exact same evidence," to revive an actual evidence test at this step.[8] But *Phillips* improperly conflates (a) **facts** on the face of the charging instrument and (b) **evidence** presented at trial, the former which is part of the factually included inquiry and the latter which reflects *Richardson*.

The case before us today is a consequence of *Phillips*, as the panel cited *Phillips* for the proposition that two offenses "could be factually included depending on the manner in which the State charged the defendant and **the evidence produced at trial**." *A.W.*, 192 N.E.3d at 232 (emphasis added) (citing *Phillips*, 174 N.E.3d at 647). It also stated that "[a] prosecutor cannot secure two convictions for the same act using the **exact same evidence**." *Id.* (emphasis added) (quotations omitted). We disapprove any opinion that relies on the *Phillips* interpretation.[9] Step 2 does **not** allow courts to examine evidence adduced at trial, but only facts presented in the charging instrument, including the "means used." *Wadle*, 151 N.E.3d at 251 n.30.

We acknowledge, as Judge Vaidik did in *Mills v. State*, that this limited analysis under Step 2 "may produce harsh results." 211 N.E.3d 22, 34 (Ind. Ct. App. 2023). Indeed, the outcome of a double jeopardy claim could vary from case to case based on the degree to which prosecutors include or exclude facts in a charging instrument. *Id.* at 34 n.4. *See, e.g., Demby v. State*, 203 N.E.3d 1035, 1045 n.12 (Ind. Ct. App. 2021) (concluding that convictions for attempted murder and aggravated battery violated *Wadle* because the offenses were included "as charged" based on the State's factual allegations that both offenses involved the same firearm, but without this inclusion there likely would have been no violation).

---

[8] In *Harris*, a panel—citing *Phillips*—focused on evidence at trial instead of analyzing the facts on the charging instrument to determine that Level 5 felony intimidation with a deadly weapon and Level 6 felony pointing a firearm were "factually included." 186 N.E.3d at 611–12. The panel relied on **trial testimony**, which supported the offense of intimidation with a deadly weapon was the "same evidence" to support pointing a firearm. *Id.* at 612.

[9] We have focused primarily on published decisions citing *Phillips* for this view, but also acknowledge that at least two unpublished cases adopt a de facto actual evidence test at Step 2. *See, e.g., Zoeller v. State*, 21A-CR-1012 (Ind. Ct. App. Mar. 28, 2022), *trans. denied* [4–1, Rush, C.J., voting to grant]; *Marshall v. State*, 21A-CR-1725 (Ind. Ct. App. Feb. 22, 2022).

Double jeopardy outcomes should not turn solely on the facts the prosecutor elects to include or exclude in the charging instrument. Step 2 as currently understood confers an **asymmetrical** benefit to the State.[10] Indeed, this Court in *Wadle* removed *Richardson*'s arbitrariness that allowed judges to choose between the statutory elements test and the actual evidence test because it produced confusion and inconsistency in the application of double jeopardy. *Wadle*, 151 N.E.3d at 241. But by pulling on the strings of *Richardson*, *Wadle* loosened the bond of protection for defendants by swapping one form of arbitrariness for another: a prosecutor until today could unilaterally decide how much to include (or not include) in the charging instrument, which could decisively determine the outcome of a double jeopardy claim. *See Mills*, 211 N.E.3d at 34 n.4.

Today, we eliminate this asymmetrical benefit to the State by holding that where ambiguities exist in a charging instrument about whether one offense is factually included in another, *see Harris*, 186 N.E.3d 604, courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2. In this event, the State can later rebut this presumption at Step 3.[11]

A case illustration shows how our new rule would function and apply in practice. The Court of Appeals opinion in *Harris*, 186 N.E.3d at 604, which has been partially disavowed today, provides a useful example. In

---

[10] When determining whether one offense is factually included in another at Step 2, *Wadle* constructs an asymmetrical framework benefiting the State in introducing actual evidence. If the prosecutor does **not** include facts in the charging instrument establishing one offense is included in another, then there is an **irrebuttable** presumption that one offense is not factually included in another regardless of how clearly the evidence and arguments at trial reveal that it is included. But if the prosecutor **does** include facts indicating one offense is factually included in another, then there is only a **rebuttable** presumption of a double jeopardy violation. Thus, the reviewing court then proceeds to Step 3, where the State can rebut the presumption with tools the defendant could not employ at Step 2—that is, actual evidence.

[11] To be sure, this modification at Step 2 still allows the State to use actual evidence at Step 3 to rebut a presumptive double jeopardy violation. Because we have removed the asymmetrical benefit, the defendant would still be barred from relying on actual evidence to establish a double jeopardy violation at Step 2. But that concern is now mitigated because the defendant would not need evidence at Step 2 given the rebuttable presumption that flows from interpreting the charging instrument in the defendant's favor rather than the State's.

*Harris*, the defendant was convicted of Level 5 felony intimidation with a deadly weapon and Level 6 felony pointing a firearm **at the same victim**. The Level 6 felony pointing a firearm was factually included because "the means used to commit" the Level 5 felony intimidation with a deadly weapon—pointing a firearm—included "all the elements" of the Level 6 pointing a firearm offense. *Id.* at 611; *see also Wadle*, 151 N.E.3d at 251 n.30 (defining a "factually included" offense).

But at oral argument here, the State argued it was wrong to find a double jeopardy violation in *Harris* because it was only clear from the evidence at trial—not the charging instrument—that the victim was the same for both offenses and pointing a firearm was factually included in the intimidation with a deadly weapon offense.[12] The State's brief in *Harris* similarly argued that, while the "charging information alleged that Harris committed intimidation with a deadly weapon by communicating a threat to Mitchell, and while doing so, Harris did draw or use a handgun," the "charge did not specify that a handgun was drawn or used by pointing the weapon at Mitchell." Appellee's Br. at 17–18 (quotations omitted). Based on the ambiguity in the charging information, it is conceivable that, while Harris was intimidating Mitchell with a deadly weapon by drawing his gun, he pointed the gun at someone else, such as a hostage. But the evidence at trial dissipated any doubt about alternate theories. The prosecutor convicted Harris by arguing to the jury that Harris "pointed that gun at Mr. Mitchell." *Harris*, 186 N.E.3d at 612 (quotations omitted).

If we applied our new rule to *Harris*, the ambiguity from the charging instrument at Step 2 would create a presumptive double jeopardy violation that would have been rebutted by the State using actual evidence at Step 3. In effect, this removes the need to rely on evidence at Step 2 by focusing exclusively on the State's charging allegations. Otherwise, applying the *Wadle* framework would create unfair outcomes

---

[12] *See* Oral Argument at 22:39–23:05, *A.W. v. State*, 23S-JV-40, https://mycourts.in.gov/arguments/default.aspx?&id=2734&view=detail&yr=&when=5&page=1&court=&search=&direction=%20ASC&future=True&sort=&judge=&county=&admin=False&pageSize=20, archived at https://perma.cc/7ENN-TPL9.

based on an asymmetrical benefit to the State. If, for example, a charging instrument alleges both theft and robbery, but the prosecutor omits facts revealing the theft is not included in the robbery—that is, because the actions occurred on **different** days—the State alone gets a second chance at Step 3 to demonstrate the offenses occurred at different times by relying on actual evidence and arguments at trial. *Wadle*, 151 N.E.3d at 249 n.27. But in a situation like *Harris*, if the prosecutor forgets to include—or perhaps even strategically omits—operative facts establishing that one offense is factually included in another, the defendant does not have **any** means to demonstrate the double jeopardy violation. This would undermine the fundamental objectives of *Wadle* in fashioning a neutral, coherent framework for analyzing substantive double jeopardy claims.

Our adjustment to *Wadle* today aligns with how courts typically construe ambiguities in the criminal context against the State when the State is the drafter. *See State v. Smith*, 71 N.E.3d 368, 371 (Ind. 2017) ("Ambiguities are construed against the drafter; in this case that is the State, which prepared the plea agreement."). And "the prohibition against cumulative punishment, absent clear statutory language to the contrary, corresponds with the principles of due process rooted in the constitutional rule of lenity." *Wadle*, 151 N.E.3d at 249 n.28. The rule of lenity also executes a similar function in resolving ambiguities in the defendant's favor rather than the State's. *Fix v. State*, 186 N.E.3d 1134, 1139 (Ind. 2022) (explaining that the rule of lenity "requires us to construe a penal statute strictly against the State while resolving any ambiguities in favor of the defendant"). In short, our decision today balances the scales by placing a

defendant's rights "beyond the reach" of unfair prosecutorial discretion,[13] while securing the State's opportunity to later rebut a violation at Step 3.[14]

### 3. Examine the facts underlying the statutory offenses

We have now arrived at the final step in *Wadle.* If a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) "examine the **facts underlying those offenses**, as presented in the charging instrument and as adduced at trial." *Wadle*, 151 N.E.3d at 249 (emphasis added) (citing *Bigler v. State*, 602 N.E.2d 509, 521 (Ind. Ct. App. 1992), *trans. denied*). Step 3 functions as a cabined version of *Richardson*'s actual evidence test, and it serves an important, practical role in our double jeopardy analysis: to facilitate the distinction between what would otherwise be two of the "same" offenses. *See id.* at 249 n.27. So, at this final step, a court may only then probe the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249. If the underlying facts reveal the two offenses are indeed "separate," there is no *Wadle* violation, "even if one offense is, by definition, 'included' in the other." *Id.* That said, if the "facts show only a single continuous crime, and one statutory offense is

---

[13] We borrow this memorable phrase from Justice Robert H. Jackson's prominent opinion in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943): "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them **beyond the reach** of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." *Id.* at 638 (emphasis added).

[14] We also point out that existing protections under our state constitution may alleviate potential unfairness from double jeopardy. *See Wadle*, 151 N.E.3d at 250–53 (discussing "supplemental constitutional protections" with which "double-jeopardy protections in Indiana operate in harmony"). **Article 1, Section 13** enshrines a defendant's right, in "all criminal prosecutions," to "demand the nature and cause of the accusation against him." IND. CONST. art. 1, § 13. This safeguard entitles the defendant to "clear notice of the charge or charges against which the State summons him to defend" at trial. *Wright*, 658 N.E.2d at 565.

included in the other, then the prosecutor may charge these offenses only as alternative (rather than cumulative) sanctions." *Id.*

## B. Application of *Wadle* to A.W.'s Multiple Adjudications

A faithful application of *Wadle* shows a substantive double jeopardy violation occurred. Here, two statutes trigger double jeopardy: (1) possession of a machine gun and (2) dangerous possession of a firearm. The **first** offense: possession of a machine gun occurs when a "person . . . knowingly or intentionally owns or possesses a machine gun," a Level 5 felony. I.C. § 35-47-5-8. "Machine gun" is statutorily defined elsewhere in the Indiana Code as: "a weapon that: (1) shoots; (2) is designed to shoot; or (3) can be readily restored to shoot; automatically more than one (1) shot, without manually reloading, by a single function of the trigger." I.C. § 35-31.5-2-190. The **second** offense: a "child" commits dangerous possession of a firearm, a Class A misdemeanor, if he "knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in Section 1[.]" I.C. § 35-47-10-5(a). This offense constitutes a "Level 5 felony if the child has a prior conviction under this section or has been adjudicated a delinquent for an act that would be an offense under this section if committed by an adult." *Id.*

Here, "neither statute clearly permits multiple punishments, either expressly or by unmistakable implication." *Wadle*, 151 N.E.3d at 254. And so because the statutory language is unclear, we must now analyze these two offenses under our included-offense statute, bringing us to Step 2.

At Step 2, we reach two independent conclusions. **First**, we conclude that dangerous possession of a firearm is "inherently included" within possession of a machine gun. Here, subsection (3) of the included-offense statute supports this conclusion. *See* I.C. § 35-31.5-2-168(3). The State contends the two offenses address "separate" harms. *See* Appellee's Br. at 12–14. But being a juvenile in possession is "a less serious harm . . . to the . . . public interest" than possession of a machine gun. *See Wadle*, 151 N.E.3d at 254 (stating that OWI-SBI, a Level 5 felony, is the "same" offense of leaving the scene of an accident, a Level 3 felony). We thus conclude that dangerous possession is inherently included in machine gun possession.

Our **second** conclusion is equally supported. On review of the face of the charging instrument, these offenses are also "factually included" because they punish the same conduct as charged against A.W. in the juvenile delinquency proceeding. In Count V Possession of a Machine Gun, the State charged that "[A.W.] did knowingly or intentionally own or possess a **machine gun**, to-wit; fully automatic Glock firearm[.]" Appellant's App. Vol. II, p. 61 (emphasis added). The State also charged in Count II Dangerous Possession of a Firearm that "[A.W.] did knowingly, intentionally, or recklessly possess a **firearm** for any purpose other than a purpose described in Indiana Code Section 35-47-10-1[.]" *Id.* at 60 (emphasis added). Based on these charges, A.W. is both a "child" and a "person." And "machine gun" is tucked within the broad category of "dangerous firearm." These classifications overlap and thus punish the **same conduct**.[15] The State even conceded at oral argument that a child who possesses a machine gun also possesses a dangerous firearm.[16] It just theorized they were separate offenses with distinct harms. But that concession does not offset the fact that, as charged, a child who possesses a machine gun necessarily possesses a dangerous firearm. And the extent to which there is factual ambiguity about whether the "means used" as presented in the charging instrument was the same weapon—a machine gun—to commit dangerous possession, the lesser-included offense, *see*

---

[15] The dissent below posited that the multiple adjudications "do not amount to multiple punishments for one act, as one requires proof that he had the status of a minor who could **not lawfully possess** the firearm." *A.W.*, 192 N.E.3d at 233 (Bradford, C.J., concurring in part, dissenting in part) (emphasis added). We disagree. The statutory language—"for any purpose other than a [lawful] purpose"—is not an essential element the State was required to prove, but rather an **affirmative defense**, which was not raised by A.W. *See, e.g., Washington v. State*, 517 N.E.2d 77, 79 (Ind. 1987) (explaining possession of a license is an affirmative defense to the charge of carrying without a license). The State's charges essentially establish that **no one** can possess a machine gun for any lawful purpose; thus, **any juvenile** who is charged with machine gun possession could **always** be charged with dangerous possession.

[16] *See* Oral Argument at 25:35–25:50, *A.W. v. State*, 23S-JV-40, https://mycourts.in.gov/arguments/default.aspx?&id=2734&view=detail&yr=&when=5&page=1&court=&search=&direction=%20ASC&future=True&sort=&judge=&county=&admin=False&pageSize=20, archived at https://perma.cc/7ENN-TPL9.

*Wadle*, 151 N.E.3d at 251 n.30, we construe any ambiguity in favor of A.W. *See Smith*, 71 N.E.3d at 371. Thus, the offenses are factually included here.

And that brings us to the final step of *Wadle*. Having determined that dangerous possession of a firearm is inherently and factually included within possession of a machine gun, Step 3 instructs that we examine the underlying facts to determine whether the two offenses are the same. *Wadle*, 151 N.E.3d at 248. Based on the facts in the charging instrument and facts adduced at the hearing, we conclude that A.W. possessed the same weapon—a fully automatic Glock—for at least thirty seconds, and is thus "compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 253. Accordingly, we find this tight compression to show a *Wadle* violation.

We thus hold that the juvenile court's multiple adjudications violate the substantive prohibition against double jeopardy, and the adjudication that A.W. committed "dangerous possession of a firearm" must be vacated.

# Conclusion

For these reasons, we affirm in part and reverse in part.

Rush, C.J., and Slaughter and Molter, JJ., concur.
Goff, J., concurs in the judgment with separate opinion.

ATTORNEY FOR APPELLANT
Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

**Goff, J., concurring in the judgment.**

Indiana's criminal code forbids convicting a criminal defendant for both a greater offense and a lesser, included offense in the same proceedings. Not long ago, this Court laid out a three-step analysis implementing this protection, hoping to bring clarity to a vexed area of the law. Today, the Court strives to resolve lingering uncertainties. It succeeds only in part. Though well-intentioned, the Court's opinion, in my view, modifies the included-offense analysis in a manner that introduces ambiguity and inconsistency. It also undermines the stability of the law. For these reasons, I concur only in the judgment.

## I. *Wadle* retired the actual-evidence test because, over the decades, that standard proved unworkable.

In 2020, this Court handed down its decision in *Wadle v. State*. Our opinion in that case aimed to clear away "a patchwork of conflicting precedent and inconsistent standards" defining the bar on "multiple convictions or punishments for the same offense in a single trial." 151 N.E.3d 227, 235 (Ind. 2020).[1] In its place, we offered "clear guidance" to the bench and bar. *Id.* at 244. *Wadle* first held that the Indiana Constitution's Double Jeopardy Clause protects only against "successive prosecutions" for the same offense. *Id.* at 246. Protection against multiple convictions for the same offense in a single prosecution, on the other hand, lay principally in code section 35-38-1-6, which bars convicting and sentencing a defendant for both an offense and an included offense. *Id.* at 248. Code section 35-31.5-2-168, in turn, defines an "included offense" as one established by proof of the "same material elements or less than all the material elements" of the offense charged, as an "attempt to commit"

---

[1] Specifically, *Wadle* addressed scenarios where "a single criminal act or transaction violates multiple statutes with common elements." 151 N.E.3d at 247. The companion case of *Powell v. State* addressed scenarios where "a single criminal act or transaction violates a single statute but harms multiple victims." *Id.* (citing 151 N.E.3d 256 (Ind. 2020)).

the offense charged, or as an offense distinguished from that charged only by "a less serious harm or risk of harm" or a "lesser kind of culpability."[2] *Id.* (quoting the statute).

To apply these statutory protections, we set out a three-step test. At step one, we look at the statutes creating the two offenses. If either "clearly permits multiple punishment," the inquiry ends. *Id.* Otherwise, we proceed to step two, at which point we ask whether one offense is included in the other under code section 35-31.5-2-168 "either inherently or as charged." *Id.* Finally, at step three, we ask whether all the facts "presented in the charging instrument" and "adduced at trial" show that the greater and included offenses constituted "a single transaction." *Id.* at 249 (internal quotation marks and citation omitted).

Step two of the *Wadle* standard "substantially mirrors the analytical framework we use to determine whether a party is entitled to an included-offense instruction at trial." *Id.* at 249 n.25 (citing *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995)). As *Wright* explained, one offense may be "*inherently*" included in another based solely on their statutorily defined elements. 658 N.E.2d at 566. Alternatively, one offense may be "*factually*" included in another when the charging instrument alleges "the means used to commit the crime charged" in such a way as to "include all of the elements of the alleged lesser included offense." *Id.* at 567.

*Wright*'s included-offense analysis is hugely important in the context of jury instructions because the State cannot seek an instruction on an uncharged offense unless it was fairly included in the offense charged, thereby giving the defendant notice. *Wadle*, 151 N.E.3d at 251–52 (citing *Wright*, 658 N.E.2d at 567); *see also Young v. State*, 30 N.E.3d 719, 723 (Ind. 2015). If a prosecutor decides to "'wield factual omissions as a sword to preclude lesser offenses,'" then the defendant may likewise "'rely on them

---

[2] Unlike the Court, I would hold that the statutory bar on conviction for a greater and an included offense also bars adjudicating a juvenile for a greater and an included offense. *See ante*, at 9 & n.6. Although the juvenile law does not so provide, "the procedures governing criminal trials apply in all matters not covered by the juvenile law." Ind. Code § 31-32-1-1.

as a shield to limit his defense'" to the offense charged. *Wadle*, 151 N.E.3d at 252 (quoting *Young*, 30 N.E.3d at 725). "Due process," as the *Wright* Court emphasized, "will brook no confusion on the subject." 658 N.E.2d at 565.

Included offenses in the *Wadle* and *Wright* contexts are two sides of the same coin. As we explained in *Wadle*, "the standard used to identify an included-offense at trial effectively delineates the scope of the double-jeopardy protection on appeal." 151 N.E.3d at 249 n.25 (citing *Moore v. State*, 698 N.E.2d 1203, 1208 (Ind. Ct. App. 1998)). Under *Wadle*, included offenses are analyzed the same way in both contexts, promoting consistency and minimizing confusion.

Today, the Court helpfully clarifies a lingering uncertainty by explaining that the "as-charged" analysis at *Wadle*'s step two is limited to the facts as alleged by the State in charging the greater offense. *Ante*, at 11. Limiting the analysis to the facts pled in the charging instrument greatly simplifies the identification of included offenses, compared with the "shifting standards and inconsistent application of controlling tests" that came before. *See Wadle*, 151 N.E.3d at 244. I would stop there and let the bench and bar apply our clear, consistent, and by now well-established standard.

## II. The new standard returns us to the actual-evidence test and raises new uncertainty.

The Court goes further, however. Its opinion modifies *Wadle*'s included-offense analysis, holding that "where ambiguities exist in a charging instrument about whether one offense is factually included in another," the ambiguities must be construed "in the defendant's favor," resulting in a presumptive—though rebuttable—conclusion that one offense does include the other. *Ante*, at 14 (citation omitted). I appreciate the Court's intent to alleviate by this change an element of unfairness in *Wadle*. I admit that the as-charged branch of step two allows the outcome to "vary from case to case based on the degree to which prosecutors include or exclude facts in a charging instrument." *Id.* at 13 (citing *Mills v.*

*State*, 211 N.E.3d 22, 34 n.4 (Ind. Ct. App. 2023)). Still, I cannot endorse the Court's solution for this difficulty.

My primary concern with the new rule is that it doesn't merely tweak *Wadle*. Rather, in my view, it takes us back to the "actual evidence" test that we abrogated. *See Wadle*, 151 N.E.3d at 241, 244 (citing *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)). That test asked whether there was a "'reasonable possibility' that the jury used the same evidence to support two or more convictions." *Id.* at 241 (quoting *Richardson*, 717 N.E.2d at 53).

Consider the Court's example of how its new factual-inclusion analysis will work. A defendant is charged with intimidation using a deadly weapon. *Ante*, at 15. The information alleges he communicated a threat and drew or used a handgun while doing so. *Id.* The defendant is also charged with pointing a firearm at the same victim. *Id.* These allegations leave it ambiguous whether the intimidating use of a handgun was in fact the pointing of the firearm, so the majority's presumption of inclusion kicks in unless the evidence at trial shows two separate acts. *Id.*

But in what sense does the intimidation offense include the pointing-a-firearm offense here, other than that both offenses are premised on the same act? One can draw or use a handgun without pointing it. The intimidation allegation did not specify that it was committed by means of pointing the handgun. All that remains is the simple fact that one act violated two statutes.

An example of our own shows how broadly the new rule may sweep. Imagine a defendant kills a victim using a machine gun. The State charges murder and possession of a machine gun. *See* I.C. § 35-42-1-1(1); I.C. § 35-47-5-8. The elements of murder do not inherently include possession of a machine gun. Nor, we assume, does the State expressly allege murder by machine gun. Yet, under the Court's new rule, murder includes machine gun possession simply because the defendant committed murder by means of firing a machine gun.

The new standard isn't really asking, then, whether one offense includes the other. It's asking whether the same evidence proves both offenses. The Court's tweak reduces *Wadle*'s as-charged analysis virtually

to step three alone, merely asking whether the evidence shows that the same act or "transaction" supported more than one offense.

It is unclear how workable the new test will be. Although it produces a commonsense outcome in the Court's own intimidation-and-pointing example, its application to trickier scenarios raises questions. Consider a variation of the Court's example so that the defendant **both** menacingly loaded the handgun with bullets **and** pointed it. Does that evidence sustain or rebut the presumption that the intimidation included the pointing? The question is reminiscent of the intractable evidence-based issues we meant to leave behind by focusing on the statutory elements and the facts actually pled. *See Wadle*, 151 N.E.3d at 241–44.

The announcement of the new rule also means that the included-offense analysis in *Wadle*'s multiple-conviction context will no longer mirror the rule in *Wright*'s instructional context. Today, the Court holds that ambiguity favors a finding of inclusion. But, when there is doubt over whether to instruct a jury at the State's request on a lesser, included offense, the ambiguity "'must be resolved in favor of the defendant'"—*i.e.*, against inclusion. *Wadle*, 151 N.E.3d at 251 (quoting *Young*, 30 N.E.3d at 723). Setting up two different tests for included offenses, as I see it, can only breed confusion.

## III. This area of the law needs clarity and stability, not more change.

My final concern is simply that the Court is once again changing the rules after we tried so recently to bring some stability to the law. Every time we make a change, we open precedential case-law to doubt and raise issues over which law applies to whom. Last year, in *Hessler v. State*, a Court of Appeals panel split over whether *Wadle* applies retroactively or not. 213 N.E.3d 511, 525 (Ind. Ct. App. 2023); *id.* at 528 (Vaidik, J., concurring in part and dissenting in part). Parties will soon be litigating and appealing the issue of whether *Wadle* or *A.W.* applies to their case.

Fundamentally, defining when offenses are included or "the same" is a vexed problem. These concepts are "deceptively simple in appearance but

virtually kaleidoscopic in application." *See Whalen v. United States*, 445 U.S. 684, 700 (Rehnquist, J., dissenting). The continual churn in our case-law proves it. *See Wadle*, 151 N.E.3d at 240–44. It is safe to predict that today's rule-change will trigger new and unforeseen dissatisfactions and problems, just as double-jeopardy rules always seem to. The best we can do is to give the bench and bar a clear, fixed standard.

Rather than pursue an ever-receding perfect double-jeopardy rule, we should remember the other devices in the "legal toolbox." *Id.* at 253. Appellate Rule 7(B) is available to "curb cumulative punishment in a single proceeding." *Id.* Article One, Section Thirteen of the Indiana Constitution entitles the defendant to clear notice of the offenses charged, which may help detect included offenses and avoid multiple convictions. *Id.* at 250–51. Where a charging instrument leaves it unclear whether two alleged offenses arise from the same facts, a defendant may move for a "more definite statement" of the charges under Trial Rule 12(E). Alternatively, a defendant may prefer ambiguity over whether a charged offense includes other offenses or not, hoping to leave the door open to conviction on a lesser, included offense.

In sum, I would clarify that *Wadle*'s step two is restricted to the statutory elements and the facts alleged in the charging instrument, *ante*, at 11, and otherwise leave the standard alone. Aside from that, I agree with the Court's decision on the sufficiency of the evidence, *id.* at 6–7, and its ultimate conclusion that A.W. was wrongly adjudicated liable for the included offense of dangerous possession of a firearm, *id.* at 18–20. I therefore concur in the judgment.